# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**ZHI CHEN,**                             )
                                          )
        **Plaintiff,**          )
                                          )   **C.A. No. 08-0252 (PLF)**
     **v.**                        )
                                          )
**DISTRICT OF COLUMBIA, *et al.*,**       )
                                          )
       **Defendants.**         )
_____ )

## DEFENDANT NICOLE HA'S MOTION TO DISMISS

Metropolitan Police Department ("MPD") Officer Nicole Ha, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests that this Court dismiss her from the above-captioned matter. As explained more fully in the accompanying Memorandum of Points and Authorities, when considering the facts set forth in the Complaint in the light most favorable to the Plaintiff, Plaintiff has failed to state any claim against Officer Ha upon which relief can be granted, and Officer Ha is entitled to judgment as a matter of law.

        Respectfully submitted,

        PETER J. NICKLES
        Interim Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        ___/s/ Samuel C. Kaplan_____
        SAMUEL C. KAPLAN (463350)
        Assistant Deputy Attorney General

        ____/s/ Shana L. Frost_____
        SHANA L. FROST (458021)

Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ZHI CHEN,                               )
                                        )
            Plaintiff,                  )
                                        )        C.A. No. 08-0252 (PLF)
      v.                                )
                                        )
DISTRICT OF COLUMBIA, *et al.*,         )
                                        )
            Defendants.                 )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT NICOLE HA'S MOTION TO DISMISS**

Plaintiff has brought the above-captioned matter against the District of Columbia

("District"), Red Roof Inns, and Metropolitan Police Department ("MPD") Officers

Charles Monk, Nicole Ha, and Chancham Spears.  As explained herein, Plaintiff has

failed to state any claim against Officer Ha upon which relief can be granted; thus,

Officer Ha respectfully requests that she be dismissed from this matter and that judgment

be entered in her favor.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the above-captioned matter in the Superior Court of the District of

Columbia.  The District filed a timely notice of removal to this Court, and subsequently

filed a motion to dismiss the District and Officers Ha and Spears for failure to serve these

Defendants properly.[1]  Since the filing of that motion, Plaintiff has successfully

effectuated personal service on Officer Ha.  Officer Ha therefore now moves the Court

for dismissal on substantive grounds.

---

[1] On May 19, 2008, the District filed a Motion for Leave to file a Supplemental Memorandum in support of its currently-pending Motion to Dismiss as Plaintiff's second attempt at service of process on the District failed as a matter of law.

Plaintiff alleges that on April 21, 2007, at approximately 2:10 a.m., she was in the vicinity of 6th and H Street, NW when Officer Monk identified himself as "police," grabbed Plaintiff by the arm, and escorted her about half a block. Pl.'s Compl. ¶ 9. Plaintiff states that Officer Monk "slammed Plaintiff towards the back hood of his own car and handcuffed Plaintiff" and then called Officers Ha and Spears out of MPD's Chinatown substation. Pl.'s Compl. ¶ 10. Plaintiff states that "[w]ithout any explanation or reading any Miranda rights to Plaintiff, both Officers Ha and Spears put Plaintiff into their own police patrol car to drive to Defendant Red Roof Inn at 5th and H [Streets]." Pl.'s Compl. ¶ 11 (emphasis omitted).

Plaintiff states that once the group arrived at the Red Roof Inn, Officer Monk began to search Plaintiff in an office at the hotel "with the two female officers watching." Pl.'s Compl. ¶ 12. Plaintiff alleges that Officer Monk removed sixty dollars from the pocket of Plaintiff's pants, gave it to the Red Roof cashier, and told Plaintiff that it was to pay for the balance of an invoice that Plaintiff allegedly owed Red Roof. Pl.'s Compl. ¶ 13. Plaintiff claims that she has never stayed at, or owed money to, the Red Roof Inn. Pl.'s Compl. ¶ 14.

Plaintiff avers that she was released after the money was taken from her, and not arrested or "papered." Pl.'s Compl. ¶ 15. She asserts that "Officer [sic] Ha and Spears acted as 'body guards and escort service' for Officer Monk all the time" and that they "never tried to question Officer Monk why he arrested Plaintiff or asked Plaintiff why she was arrested by Officer Monk." *Id.* Plaintiff claims that Officers Ha and Spears "did not stop or try to intervene with Officer Monk's actions." Pl.'s Compl. ¶ 16. Plaintiff states that she knows Officers Ha and Spears from living and working in Chinatown, and that

she asked for their "intervention in vain." *Id.* She alleged that she asked for a Chinese interpreter, but that "neither officer responded nor honored the request by Plaintiff." *Id.*

Plaintiff brings the following counts in her lawsuit: (1) personal injury against all defendants; (2) false arrest and imprisonment against all defendants; (3) intentional infliction of emotional distress against all defendants; (4) negligence against all defendants; (5) gross negligence and negligence against the District and Red Roof Inn; (6) negligent training, supervision and maintenance of personnel against the District and Red Roof Inn; and (7) violation of civil rights against the District and the individual officers. As explained herein, none of these claims are valid as to Officer Ha.

## II.    STANDARD OF REVIEW

In examining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. __, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). While a court "must not make any judgment about the probability of the plaintiff's success," *Aktieselskabet AF 21 November 2001 v. Fame Jeans, Inc.*, 2008 U.S. App. LEXIS 9627 at *20 (D.C. Cir. Apr. 29, 2008), bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (1987). Rather, the court need not accept inferences drawn by Plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications* Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III.    ARGUMENT

#### A.  Plaintiff Has Failed to State a Claim for "Personal Injury" Against Officer Ha

In support of her claim for personal injury, Plaintiff claims that "Defendants, while acting in their capacity as police officers for the District of Columbia, approached Plaintiff and assaulted and battered Plaintiff without any justification."  Pl.'s Compl. ¶ 22.  Specifically, she states that she "sustained injury to her body during the twisting [sic] her arm and slamming her towards the car and handcuffing her arms at the back."  Pl.'s Compl. ¶ 24.

Preliminarily, Plaintiff has failed to state a claim insofar as there is no cause of action for "personal injury."  Personal injury is an element of other types of causes of action, such as battery, but it does not serve as an independent claim.  Moreover, in the factual portion of her Complaint, there are no allegations that Officer Ha caused any injury to Plaintiff.  Plaintiff states that it was Officer Monk that "slammed Plaintiff towards the back hood of his own car and handcuffed Plaintiff" and then "called out two other officers, Ha and Spears, out of the Chinatown substation."  Pl.'s Compl. ¶ 10.  Although Plaintiff claims that Officers Ha and Spears "put Plaintiff into their own police patrol car" to drive Plaintiff less than a block to the Red Roof Inn, Plaintiff has not alleged that these actions resulted in personal injury.  The facts that Plaintiff alleges in support of her claim for personal injuries – i.e., the "twisting" of Plaintiff's arm, the "slamming" into the car, and the handcuffing – were actions that were not performed by Officer Ha.  Thus, as Plaintiff's own factual assertions support that Officer Ha caused no injury to Plaintiff, Plaintiff's claim for personal injury against Officer Ha should be dismissed.

To the extent that Plaintiff's claim against Officer Ha should be construed as one for assault and battery, *see* Pl.'s Compl. ¶ 22, Plaintiff's claim fails for the same reasons. The District of Columbia Court of Appeals has defined an assault as "'an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff.'" *Holder v. District of Columbia,* 700 A.2d 738, 741 (D.C. 1997) (quoting *Etheridge v. District of Columbia,* 635 A.2d 908, 916 (D.C. 1993)).[2]  A battery is defined as "an intentional act that causes a harmful or offensive bodily contact."  *Holder*, 700 A.2d at 741.  Here, Plaintiff does not claim that Officer Ha threatened or caused any harmful bodily contact to Plaintiff.  Thus, Plaintiff has failed to state a claim against Officer Ha for assault and battery.

### B. Plaintiff Has Failed to State a Claim for False Arrest and Imprisonment Against Officer Ha

To state a claim of false arrest and imprisonment against Officer Ha, Plaintiff must allege that she was detained or restrained against her will within boundaries imposed by Officer Ha, and that the restraint was unlawful.  *Koroma v. United States*, 628 F. Supp. 949, 952 (D.D.C. 1986).  Here, the facts that Plaintiff alleges with respect to her detention are that Officer Monk grabbed Plaintiff, handcuffed her, and then called Officers Ha and Spears out of the Chinatown substation.  Pl.'s Compl. ¶¶ 9-10.  Plaintiff states that Officers Ha and Spears put Plaintiff in their squad car and drove her approximately half a block to the Red Roof Inn, where Officer Monk apparently took custody of Plaintiff again.  Pl.'s Compl. ¶¶ 11-12.

---

[2]  Indeed, the D.C. Court of Appeals has held that "a police officer is protected to an even greater degree against assault claims arising from arrests:  unless the *threatened* use of force is clearly excessive, an officer is protected against liability for assault."  *Jackson v. District of Columbia,* 412 A.2d 948, 956 (D.C. 1980) (emphasis in original).

"'[I]n determining whether a detention has occurred within the meaning of the Fourth Amendment, the Supreme Court has recognized three types of police-citizen encounters; (1) a full-scale arrest, which must be supported by probable cause, (2) a brief investigatory detention which must be supported by reasonable suspicion, and (3) a brief police-citizen encounter, which requires no justification.'" *Cotton v. District of Columbia,* 2008 U.S. Dist. LEXIS 25856 at * 12 (D.D.C. Mar. 31, 2008) (quoting *Polk v. District of Columbia,* 121 F. Supp. 2d 56, 64 (D.D.C. 2000)). Here, Officer Ha's actions, as described by Plaintiff, at most constituted a *Terry* stop, which occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968). An officer's actions of placing an individual in a squad car for a brief one-half block trip to the scene of a reported crime would lead a reasonable person to believe that they were not free to leave at that moment.

To justify a *Terry* stop, Officer Ha only needed a reasonable, articulable suspicion of criminal conduct. *Cotton,* 2008 U.S. Dist. LEXIS at *14-15 (citing *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000); *Terry,* 392 U.S. at 30). "'*Terry* stops require only that officers have a minimal level of objective justification.'" *Id.* at *15 (quoting *United States v. Goddard,* 491 F.3d 457, 460 (D.C. Cir. 2007) and *INS v. Delgado,* 466 U.S. 210, 217 (1984)) (internal quotation omitted).

Under the circumstances Plaintiff presents, where a police officer is summoned by another officer to a scene where an individual is in handcuffs, it is reasonable for the arriving officer to have an objectively reasonable belief that detention for investigatory purposes is justified, and therefore to transport the detained individual one-half block

back to the scene of a purported crime, and to remain with the reporting officer while the alleged crime is investigated. The officers were not obligated to conduct an independent investigation to justify participation in a *Terry* stop (one that was already in progress when they arrived). *See* Compl. ¶¶ 15-16 (asserting that Officers Ha and Spears did not inquire of Officer Monk why he was arresting Plaintiff).

To the contrary, courts have found the required "minimal level of objective justification" even where (unlike here) there was ample counter-evidence that Plaintiff had done nothing wrong. In *Cotton*, for example, a police officer arrived on the scene after a fight between two women (the plaintiff and her neighbor) had taken place. *Cotton,* 2008 U.S. Dist. LEXIS 25856 at *4. The officer was informed that the plaintiff had been threatened with a knife by her neighbor during the altercation. *Id.* Despite being told that the plaintiff was the victim, the officer forced the plaintiff to the ground, handcuffed her, and forcibly removed her to a nearby abandoned apartment building, where the officer allegedly threatened to arrest her and place her children in the custody of Child Protective Services if the plaintiff did not leave the area. *Id.* at *4-5. On these facts, Judge Urbina found that the plaintiff was stopped for legitimate investigatory purposes, even though the Plaintiff turned out to be the victim of a crime, and thus granted summary judgment to the defendants on the plaintiff's false arrest and imprisonment claim. *See also Moorehead v. District of Columbia,* 747 A.2d 138, 147-48 (D.C. 2000) (finding that a police officer had a reasonable good faith belief based upon what the officer observed when arriving at the scene of an alleged assault and speaking with witnesses, and that the officer had no duty to conduct an investigation to dispel a good faith belief that a crime had been committed); *United States v. Hamilton,* 390 A.2d

449, 453 (D.C. 1978) ("a police officer may place great reliance on information provided by a fellow officer.").

Similarly, Officer Ha's actions of transporting Plaintiff less than one block for the purpose of assisting Officer Monk in investigating the alleged theft of services from the Red Roof Inn constituted a brief detention for investigatory purposes, and not an arrest. Plaintiff concedes that she was not charged with any crime after the investigation ended, although she was allegedly forced to pay an outstanding bill at the hotel which she claims was not hers.[3]  Moreover, because "the action of the [officer] must be viewed from what [she] observed and not from what may have been in the mind of the plaintiff," under the circumstances, the actions of Officer Ha in transporting Plaintiff pursuant to another officer's *Terry* stop were reasonable, notwithstanding any alleged mistake (by a different officer) as to the identity of the perpetrator.  *Prieto v. May Department Stores Co.,* 216 A.2d 577, 579 (D.C. 1966).

### C.  Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress Against Officer Ha

Plaintiff has failed to state a claim for intentional infliction of emotional distress against Officer Ha.  In this jurisdiction, in order to establish a claim for intentional infliction of emotional distress, Plaintiff must show that Officer Ha (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused her severe emotional distress.  *Gregg v. Hay-Adams Hotel*, 942 F. Supp. 1, 10 (D.D.C. 1996), citing *King v. Kidd*, 640 A.2d 656, 667-68 (D.C. 1993); *see also Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991).

---

[3] Nevertheless, Plaintiff does not assert that Officer Ha played any role in the forcible settling of the purported debt.

There is no general duty of care to avoid causing mental distress, and liability is not imposed for all conduct that causes mental distress. *See Duncan v. Children's Nat. Medical Center*, 702 A.2d 207, 211 (D.C. 1997). Liability does not extend to "mere insults, indignities, threats, annoyance, petty oppressions, or other trivialities;" instead, it is imposed only when the conduct goes "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (quoting Restatement (Second) of Torts § 46 cmt. d. n21 (1965)); *Rogala v. District of Columbia, et al.*, 161 F.3d 44 (D.C. Cir. 1998). As our Circuit stated in *Browning v. Clinton*, 292 F.3d 235, 240-249, (D.C. Cir. 2002), a claim for intentional infliction of emotion distress "is reserved for truly outrageous conduct." This very demanding standard is infrequently met. *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 186 (D.D.C. 1997).

In order for Plaintiff to prevail on her emotional distress claim, she must allege that Officer Ha's actions rise to the level of extreme and outrageous conduct. In determining whether the conduct is extreme and outrageous this Court must consider: "(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993).

As set forth above, Plaintiff claims that Officer Ha transported her less than one block to the Red Roof Inn, observed Officer Monk pat down the Plaintiff and take money from the Plaintiff that Plaintiff allegedly owed the Red Roof Inn, and release the Plaintiff from custody without charging Plaintiff with any crime. Plaintiff also alleges that Officer

Ha failed to provide a translator when asked.[4]  These actions do not rise to the level of

extreme or outrageous conduct.  Rather, they are simply the actions of an officer assisting

another officer in the other officer's investigation of a crime.  The fact that Plaintiff

alleges that she did not owe money to Red Roof Inn does not make the officers' actions

extreme or outrageous while they were investigating the crime.

Plaintiff has also not demonstrated the second element of her claim, that Officer

Ha intentionally or recklessly caused Plaintiff emotional distress.  While "[i]ntent or

recklessness can be inferred from the outrageousness of the acts," here, the acts simply do

not support an inference.  *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C. 1984), citing

*Anderson v. Prease,* 445 A.2d 612, 613 (D.C. 1982).  Plaintiff does not allege that Officer

Ha was aware that Plaintiff had not committed a crime.  In fact, Plaintiff does not even

allege that Officer Monk was aware that Plaintiff had not committed a crime.  Plaintiff

also does not allege that Officer Ha initiated the incident.  The bare facts that Plaintiff

pleads vis-à-vis Officer Ha cannot lead to an inference that Officer Ha intentionally or

recklessly caused Plaintiff emotional distress.

To satisfy the third element of her emotional distress claim (*i.e.*, severe emotional

distress), Plaintiff must establish that Officer Ha's conduct caused her to suffer

"emotional upset 'of so acute a nature that harmful physical consequences might not be

unlikely to result.'" *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982)

(quoting *Clark v. Associated Retail Credit Men*, 105 F.2d 62, 65 (D.C. Cir. 1939)).  "A

plaintiff cannot prevail on an intentional infliction of emotional distress claim merely

---

[4] Plaintiff does not allege that any particular harm arose from the failure to provide an interpreter.  Indeed, Plaintiff's allegations question the true necessity of an interpreter, particularly where Plaintiff appeared to understand that she was accused of failing to pay a $60 balance to Red Roof Inn.  *See* Pl.'s Compl. ¶¶ 13-14, 16-17.

because he suffered mental distress." *Khin Maung Than v. Radio Free Asia,* 496 F. Supp. 2d 38, 51 (D.D.C. 2007) (Urbina, J.) (citing *Crowley v. North Am. Telecoms. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997)).  Rather, the plaintiff must show that the distress is "reasonable and justified under the  circumstances. . . ."  RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965).  "[T]here is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge."  *Id.*

Here, while Plaintiff claims that she has not been able to "hold her job due to this incident," "has tremendous fears whenever he [sic] sees police officer [sic] nearby," and "is scaried [sic] to go out at night by herself," Plaintiff's reaction to Officer Ha's role in the investigatory stop is extreme under the circumstances as alleged.  Compl. ¶ 35.  As Plaintiff has alleged, Officer Ha came to the aid of another officer who requested her assistance in an investigation.  Plaintiff only claims that Officer Ha drove her down the block, stood by and observed Officer Monk's actions, and refused Plaintiff's request for an interpreter.  Compl. ¶¶ 11-12, 16.  Plaintiff's allegations relating to Officer Ha are insufficient to state a claim against Officer Ha for intentional infliction of emotional distress, and this claim should be dismissed as to Officer Ha.

### D.  Plaintiff Has Failed to State a Claim for Negligence Against Officer Ha

In support of her claim for negligence, Plaintiff avers as follows:

38.  The conduct of Defendants Charles Monk, Nichole [sic] Ha and Chancham Spears which form the basis for this cause of action was negligent and/or grossly negligent in that they breached the applicable standard of care for police officers, specifically, Defendants Charles Monk, Nichole [sic] Ha and Chancham Spears. [sic]

(i)      Used improper motives to effectuate said arrest;

> (ii)     Defendant Charles Monk, after assaulting Plaintiff, wrongfully and
> unlawfully told Plaintiff that she owed Red Roof Inns money
> which was absolutely false;
>
> (iii)    Falsely arrested and imprisoned Plaintiff;
>
> (iv)    Officers Nichole [sic] Ha and Chancham Spears, and agents of
> Defendant's "Red Roof Inn," conspired with Defendant Charles
> Monk, to transport Plaintiff back to Defendant's Red Roof Inn,
> from the police Chinatown substation, where they conspired to
> search and rob her money without any probable cause;
>
> (v)     Otherwise failed to conduct themselves in accordance with
> established policies, procedures and orders as required by the
> applicable standard of care.

Pl.'s Compl. ¶ 38.

Plaintiff has not pled any acts of negligence, and has instead argued tautologically that the *intentional* acts of the officers were negligent. Specifically with respect to Officer Ha, Plaintiff claims that Officer Ha's actions of falsely arresting and imprisoning Plaintiff, and conspiring with co-defendants, constituted negligence.

In the District of Columbia, a Plaintiff alleging injury caused by the intentional acts of a police officer may assert more than one theory to support recovery, including theories for intentional torts, such as assault and battery, and the accidental tort of negligence. *See District of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003); *Holder*, 700 A.2d at 741. However, claims of intentional torts are separate and distinct from a claim of negligence, and the pleader must assert facts to support each element of whichever claim is asserted. *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000). "In other words, a plaintiff cannot seek to recover by 'dressing up the substance' of one claim . . . in the 'garments' of another . . ." *Sabir*, 755 A.2d at 452 (quoting *United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993)).

When a negligence claim involves an allegation of use of unnecessary force by a police officer, the D.C. Court of Appeals has clearly stated that the "negligence must be

distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." *Chinn*, 839 A.2d at 711. The Court went on to explain that "[i]t is tautological to speak of the applicable standard of care as being the duty not to use excessive force; that is the precise boundary line of the privilege itself, and it matters not whether it is exceeded because of the deliberate intention of the officer or through a mistake as to the limit of objectively reasonable allowable force." *Id.*

Here, Plaintiff has attempted to plead a negligence claim by asserting intentional tort claims. First, with respect to the negligence allegations pertaining to Officer Ha, Plaintiff claims that Officer Ha falsely arrested and imprisoned Plaintiff. As noted above, Plaintiff has failed to state a claim for these intentional torts and thus, they cannot possibly form a basis for any other claim as they cannot stand as claims on their own. Even so, there can be no doubt that false arrest and false imprisonment are intentional and not negligent torts. *See, e.g., Johnson v. United States,* 547 F.2d 688, 692 (D.C. Cir. 1976) ("false imprisonment historically has been viewed as an intentional tort; notwithstanding liability for negligence causing a confinement when actual damage ensues, only an act intended to impose confinement or known by the action to be substantially certain of doing so generates the common law tort of false imprisonment."). There is no allegation that Officer Ha accidentally or unintentionally confined Plaintiff. Rather, Plaintiff's allegations can only lead to the conclusion that Officer Ha intended to restrain Plaintiff. Thus, Plaintiff cannot use her allegations of false arrest or imprisonment to support her negligence claim.

Plaintiff's second allegation in support of a negligence claim against Officer Ha is that Officer Ha took part in a conspiracy to "search and rob her money without any probable cause."  The D.C. Circuit has held that "the two essential elements of civil conspiracy are (1) 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner'; and (2) 'an overt tortious act in furtherance of the agreement that causes injury.'"  *Hall v. Clinton,* 285 F.3d 74, 82-83 (D.C. Cir. 2002), quoting *Halberstam v. Welch,* 705 F.2d 472, 479 (D.C. Cir. 1983) (emphasis omitted).  Plaintiff's conspiracy claim sounds in intentional tort, and not negligence.  Each aspect of a civil conspiracy claim – the agreement and the overt tortious act – are intentional acts of the party, and not an accidental or negligent act.  Indeed, there is no component of a conspiracy claim that could be construed as accidental.  Thus, Plaintiff cannot sustain her negligence claim on an alleged conspiracy.

Finally, Plaintiff claims that Officer Ha failed to "otherwise" conduct herself in accordance with established policies, procedures and orders.  It is entirely unclear what additional conduct Plaintiff could be referring to on top of the intentional torts that she lists which, as discussed above, cannot be used to establish a negligence claim.  Plaintiff has not stated any policies, procedures, or orders that Officer Ha did not follow, and thus has not complied with the basic requirements of notice pleading.  In addition, Plaintiff states no standard of care other than the "applicable standard of care for police officers" without indicating what that standard of care is.  This is insufficient to state a negligence claim.

### E.  Plaintiff Has Failed to State a Claim Against Officer Ha for Violation of Civil Rights

Plaintiff's claim for violation of her civil rights, pursuant to 42 U.S.C. § 1983, reads as follows:

> 56.  The conduct of Defendants Monk, Ha and Spears as agent, [sic] servants and/or employees of Defendant District of Columbia occurred under color of law, including existing statutes, ordinances, regulations, customs and policies of the District of Columbia and the United States of America.

> 57.  The acts of Defendants Charles Monk, Nichole [sic] Ha and Chancham Spears as agents, servants and/or employees of Defendant District of Columbia complained of therein, operated to deprive Plaintiff, Zhi Chen of her rights, privileges and immunities under the U.S. Constitution, Laws and Statutes of the United States.

> 58.  Specifically, Plaintiff was subjected to an unlawful arrest, and falsely imprisoned and was subjected to excessive and unreasonable use of physical force, deprivation of her right to be secure in her person and was deprived of her rights to be free of punishment and/or other deprivation of liberty without due process of law, to the equal protection under the law as guaranteed by the Fourth and Fifth Amendments; was subject to excess [sic] and outrageous emotional trauma, to a criminal prosecution that was not designed nor intended to bring, an offender to justice by Charles Monk, Nichole [sic] Ha and Chancham Spears, as agents servants and or employees of the Defendant District of Columbia, and in other ways.

Compl. ¶¶ 56-58.

To the extent that Plaintiff has attempted to assert a Fifth Amendment claim, Plaintiff's efforts are in vain.  As this Court has previously observed:

> *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Tafler v. District of Columbia*, 2006 U.S. Dist. LEXIS 81714, *31-32 (D.D.C. Nov. 8, 2006) (Friedman, J.), quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original); *Albright v. Oliver,* 510 U.S. 266, 273 (1994).  Here, Plaintiff's constitutional claims relate to her arrest and the force used in effectuating her arrest; therefore, the alleged constitutional violations fall within the Fourth Amendment.  Thus, insofar as Plaintiff has alleged a violation of her Fifth Amendment rights, Plaintiff's claim under the Fifth Amendment must be dismissed and considered only under the parameters of the Fourth Amendment.

The Fourth Amendment protects against unreasonable searches and seizures. *United States v. Martinez-Fuerte,* 428 U.S. 543, 554 (1976).  As discussed above, Officer Ha's actions towards the Plaintiff constitute a *Terry* stop insofar as the detention of Plaintiff was brief and conducted for investigatory purposes based upon reasonable suspicion of criminal conduct.  Here, Officer Ha arrived on the scene after Plaintiff was detained by Officer Monk on suspicion of criminal conduct.  Pl.'s Compl. ¶ 10.  Officer Ha transported Plaintiff less than one block back to the scene of a purported crime, and allegedly stood by while Officer Monk conducted an investigation, insisted that Plaintiff pay a bill allegedly owed to Red Roof Inn, and then released Plaintiff.  Pl.'s Compl. ¶¶ 11-15.

On Plaintiff's facts, Officer Ha's limited actions in the scenario cannot possibly rise to the level of a Fourth Amendment violation.  By Plaintiff's own admission, the overall detention was limited.  Although Plaintiff has claimed that Officer Ha placed her in a squad car and drove her down the street, a *Terry* "stop may also include forced relocation of the suspect."  *United States v. Jones,* 973 F.2d 928, 931 (D.C. Cir. 1992),

*reh'g granted and opinion vacated in part on other grounds,* 973 F.2d 944 (D.C. Cir. 1992), citing *United States v. White,* 648 F.2d 29, 34-40 (D.C. Cir. 1981).  Additionally, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham,* 490 U.S. at 396.  Thus, on the facts that Plaintiff has alleged, Officer Ha did not violate Plaintiff's Fourth Amendment rights.

### F.  Even If Plaintiff Can State a Claim Against Officer Ha for Violation of Civil Rights, Officer Ha Is Entitled to Qualified Immunity

Generally, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  However, even if the Court were to find that Plaintiff has stated a claim of violation of her Fourth Amendment rights by Officer Ha, Officer Ha would be entitled to qualified immunity as her actions were not clearly unlawful.

Qualified immunity arguments are especially appropriate early in the proceedings of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, *a ruling on that issue should be made early in the proceedings* so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added).  "As a result," the Supreme Court wrote, "'we repeatedly have stressed the importance of resolving immunity questions at the *earliest possible stage* in litigation.'"  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (emphasis added).

In determining whether a right was clearly established at the time of a particular incident, the Court must examine the claimed right "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Thus, the right alleged to be violated "must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Indeed, "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 206. "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004).

"Officers making a lawful *Terry* stop, like those making a lawful arrest, are entitled to qualified immunity." *Weaver v. Hanna,* 122 F. Supp. 2d 1, 3 (D.D.C. 2000). Thus, unless the officer's actions were not justified at the inception of the stop, or whether the stop was not "reasonably related in scope to the circumstances which justified the interference in the first place," *Terry*, 392 U.S. at 20, Officer Ha is entitled to qualified immunity.

As explained above, according to the facts alleged by Plaintiff, Officer Ha drove Plaintiff down the block to the scene of a purported crime, and waited with Officer Monk while he investigated the purported crime and released Plaintiff after Officer Monk took the money Plaintiff allegedly owed Red Roof. On these facts, there simply is no clearly established right guaranteed to Plaintiff that Officer Ha could have violated. Officer Ha

was entitled to rely on Officer Monk's judgment that the stop was appropriate absent some clear reason to believe it was not.

Even if Officer Ha was mistaken as to whether her conduct was reasonable under the circumstances, she is still entitled to the qualified immunity defense as the Supreme Court has recognized an "accommodation for reasonable error . . . because [officers] should not err always on the side of caution because they fear being sued." *Hunter,* 502 U.S. at 229. Moreover, any obligation that Officer Ha might have to intervene to prevent Officer Monk from allegedly violating any constitutional right Plaintiff might have had does not extend to questioning the basis for Officer Monk's arrest of Plaintiff. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) (holding that "officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official."); *see also Jacobs v. Village of Ottawa Hills,* 2001 WL 224063 (6th Cir. Feb. 26, 2001) (upholding claim of qualified immunity for an officer that arrived on the scene of a *Terry* stop after the stop was under way, even though qualified immunity was denied to the officer that initiated the stop as that officer did not have reasonable suspicion for the stop). Because the facts as alleged do not support that Officer Ha had any indication that Officer Monk used excessive force against the Plaintiff, unjustifiably arrested Plaintiff, or violated Plaintiff's constitutional rights in any way, even if Plaintiff has pled a constitutional claim, Officer Ha is entitled to qualified immunity.

## IV.    CONCLUSION

For the reasons set forth above, Officer Ha respectfully requests that Plaintiff's

Complaint against her be dismissed.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

___/s/  Samuel C. Kaplan_____
SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General

____/s/  Shana L. Frost_____
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov