UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ZHI CHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 08-0252 (PLF) |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ZHI CHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1536 (PLF) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

        This matter is before the Court on the motion for summary judgment filed by defendants Nicole Ha and the District of Columbia. Upon consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case, the Court will grant the motion in part and deny it in part, entering judgment for the District of Columbia as to all claims against it and for Nicole Ha as to some of the claims against her.[1]

---

    [1]     The papers submitted in connection with this matter include: the complaint in Civil Action No. 08-0252 ("252 Compl."); the complaint in Civil Action 09-1536 ("1536 Compl."); Nicole Ha and the District of Columbia's joint motion for summary judgment ("MSJ"); Ms. Ha and the District's Statement of Material Facts As to Which There Is No Genuine Issue (attached to the motion for summary judgment) ("DSMF"); the plaintiff's

I.   BACKGROUND

The claims asserted by plaintiff Zhi Chen arise from her encounter with three officers of the District of Columbia Metropolitan Police Department ("MPD") on April 21, 2007. On that date defendant Charles Monk, at that time an MPD officer, was moonlighting as a security guard at a Red Roof Inn located in the Chinatown neighborhood of the District of Columbia.  DSMF ¶ 1; PSMF ¶¶ 1-2.  According to Officer Monk, at some point in the very early morning, he was informed by the desk clerk on duty at the Red Roof Inn that "there was a problem with a room, an unpaid service."  MSJ, Ex. 1 at 51.  When the clerk called the room in question, an "Asian lady" answered the phone and agreed to come down and pay the balance due. Id.  Shortly after the call, however, the lady ran through the lobby, past the desk clerk, and out the hotel's front door.  Id. at 52.

Officer Monk says that after recounting this story, the clerk led him to the front of the hotel and pointed to a woman whom he identified as the "Asian lady" who had absconded from the hotel without paying her bill.  MSJ, Ex. 1 at 52.  Officer Monk then climbed into his truck and drove a short distance toward the woman, then got out of the truck and approached her. Id. at 53.

Ms. Chen was the woman that Officer Monk approached concerning the unpaid hotel bill.  See MSJ, Ex. 1 at 55; PSMF ¶ 5.  According to her, at around 2 or 3 a.m. on April 21, 2007, she had just left her job at the office of a bus company when Officer Monk appeared and "twisted" her left arm behind her back.  Opp., Ex. 5 at 19-20.  Officer Monk identified himself as

---

opposition to the motion for summary judgment ("Opp."); plaintiff's Statement of Material Facts in Dispute ("PSMF"); and Ms. Ha and the District's reply in support of their motion for summary judgment ("Reply").

a police officer and showed Ms. Chen his badge. Id. at 20. He then marched Ms. Chen to his truck, which was parked nearby, and, after he had removed a set of handcuffs from the trunk, placed them around Ms. Chen's wrists. Id. at 22-23. Then, while Ms. Chen stood behind his car with her hands cuffed together, he went into a nearby building and emerged soon afterward with two other police officers, Chancham Spears and defendant Nicole Ha. PSMF ¶¶ 9-11. Officer Monk then got back into his truck while one of the other two officers placed Ms. Chen in a police vehicle and the third officer entered a second police vehicle. Opp., Ex. 5 at 28-30. All three vehicles then traveled the short distance to the Red Roof Inn. Id. at 30-31.

   Once at the Red Roof Inn, Officer Monk and his two fellow officers escorted Ms. Chen, who was still handcuffed, into the hotel lobby. Opp., Ex. 5 at 30-32. Ms. Chen, who has limited knowledge of English, asked for a Chinese interpreter, but was ignored. Id. at 32. None of the officers explained to Ms. Chen why she had been detained and brought to the Red Roof Inn. Id. Instead, while Officers Spears and Ha looked on, id. at 31, Officer Monk reached into one of Ms. Chen's pockets and pulled out a large roll of bills. Id. at 34. He took three $20 bills from the roll and replaced the remainder of the money in Ms. Chen's pocket. Id. Officer Monk then took the $60 he had removed from Ms. Chen's pocket to the hotel's front desk and gave it to the clerk there. Id. at 38. He gave Ms. Chen eighty cents in change, removed her handcuffs, and, after taking a photo of her, told her to "get out." Id. at 32-33, 38, 40. At Ms. Chen's request, Officer Monk obtained a receipt for her. Id. at 38. The receipt, listing charges incurred by a "Steven Blocker" who had stayed in Room 721 of the Red Roof Inn on the night of April 20, 2007, showed that a $59.20 balance had been paid in cash on April 20, 2007. See Opp., Ex. 2.

By Ms. Chen's account, she saw Officer Monk again later that day, at around 2 p.m., when he came into her workplace and apologized for taking her money. Opp., Ex. 5 at 47-48. With the help of a co-worker of Ms. Chen's who served as a translator, Officer Monk said, according to Ms. Chen, that a "Hispanic woman" had approached him earlier that day and "returned the money" that had not been paid for the balance due at the Red Roof Inn. Id. at 48. At that point Officer Monk realized that he had wrongly apprehended Ms. Chen and came to apologize to her and to return the $60 he had taken from her. Id. Ms. Chen refused to accept the $60 from him because he wanted to take the Red Roof Inn receipt back in exchange, and she had decided at that point that she "wanted to sue [him] with the help of a lawyer." Id. at 49.

Ms. Chen does not claim to have sustained any lasting physical injuries as a result of her encounter with Officers Monk, Spears, and Ha, see Opp., Ex. 5 at 52, but says that she continues to have "psychological issues" and "nightmares" resulting from the incident, in part because "according to Chinese custom, if [she] didn't commit any crime" but was arrested anyway, she "would have bad luck forever." Opp., Ex. 5 at 49, 60, 62. Her two operative complaints allege that Officers Monk and Ha are liable for intentional infliction of emotional distress, 252 Compl. ¶ 34; common law false arrest, id. ¶ 29; violations of 42 U.S.C. § 1983, id. ¶¶ 57-58; and the tort of "personal injury," id. ¶ 22, which the Court has previously interpreted as an assault and battery claim. See Chen v. District of Columbia, 256 F.R.D. 267, 271 n.4 (D.D.C. 2009). Ms. Chen also brings a negligence claim against Officer Monk, 252 Compl. ¶ 38; a similar claim against Officer Ha has been dismissed. See Chen v. District of Columbia, 256 F.R.D. at 273-74. Ms. Chen's remaining claim against the District of Columbia is for negligent supervision and training of personnel. 1536 Compl. ¶ 40. Officer Ha and the District

of Columbia have moved for the entry of summary judgment in their favor as to Ms. Chen's claims against them.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by

affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is required to provide evidence that would permit a reasonable jury to find in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

### III.  CLAIMS AGAINST DEFENDANT HA

#### A. False Arrest

Although Ms. Chen alleges in her complaint that the defendants are liable for "false arrest and imprisonment," 252 Compl. ¶ 31, the Court treats that claim as one simply for false arrest, since "[t]here is 'no real difference as a practical matter between false arrest and false imprisonment.'" Barnhardt v. District of Columbia, 723 F. Supp. 2d 197, 214 (D.D.C. 2010) (quoting Shaw v. May Dep't Stores Co., 268 A.2d 607, 609 n.2 (D.C. 1970)). To prevail on a

claim for false arrest, a plaintiff must demonstrate that she was detained unlawfully. See Enders v. District of Columbia, 4 A.3d 457, 461 (D.C. 2010) ("The gravamen of a complaint for false arrest or false imprisonment is an unlawful detention."). The detention of a plaintiff by a defendant police officer is lawful if the officer effected the detention constitutionally — that is, with probable cause if the detention was an arrest, or upon reasonable suspicion if the detention amounted only to a Terry stop. See Barnhardt v. District of Columbia, 723 F. Supp. 2d at 214-15 (probable cause); Rice v. District of Columbia, Civil Action No. 09-0130, 2011 WL 658762, at *2-*3 (D.D.C. Feb. 24, 2011) (reasonable suspicion). Alternatively, regardless of whether the detention passes constitutional muster, "a police officer may justify an arrest by demonstrating that (1) he or she believed, in good faith, that his or her conduct was lawful, and (2) this belief was reasonable." Weishapl v. Sowers, 771 A.2d 1014, 1020-21 (D.C. 2001) (internal quotation marks and citation omitted).

    Officer Ha contends that even if Officer Monk lacked the level of suspicion necessary to make his detention of Ms. Chen constitutional, Officer Ha cannot be held liable for false arrest because she reasonably believed in good faith that she was acting lawfully when she helped transport Ms. Chen to the Red Roof Inn. See MSJ at 20. Officer Ha points out that she became involved in Ms. Chen's detention only upon the request of Officer Monk, who had already detained and handcuffed Ms. Chen and told Officer Ha that Ms. Chen "was being detained for investigation of theft" and asked for assistance in bringing Ms. Chen to the nearby Red Roof Inn. MSJ, Ex. 5 at 10. According to Officer Ha, "based upon the information provided by Officer Monk, she had a good faith belief that her actions in transporting Ms. Chen were lawful." MSJ at 21.

The problem with this contention by Officer Ha is that it turns on issues of fact and there is no evidence in the record to show what information was "provided by Officer Monk." In addition to Officer Ha's statement during her deposition that Officer Monk told her that Ms. Chen "was being detained for investigation of theft," the record contains Officer Monk's statement, made during his own deposition, that he "explained to [Officers Ha and Spears] what I had." MSJ, Ex. 1 at 55. Needless to say, this statement does nothing to clarify exactly what "information provided by Officer Monk" allegedly convinced Officer Ha that her participation in the detention of Ms. Chen would be lawful. Upon such a record, the Court cannot conclude as a matter of law that Officer Ha has demonstrated that she had a reasonable, good faith belief in the lawfulness of her actions. This issue must be resolved by a jury at trial.

### B. Assault and Battery

"An assault is an intentional act and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim," while "[a] battery is an intentional act that causes a harmful or offensive bodily contact." Evans-Reid v. District of Columbia, 930 A.2d 930, 937 (D.C. 2007). The unreasonable use of force by a police officer may be an assault and battery under District of Columbia law, Hundley v. District of Columbia, 494 F.3d 1097, 1101 (D.C. Cir. 2007), but a police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the [officer] reasonably believes to be necessary." Scales v. District of Columbia, 973 A.2d 722, 730 (D.C. 2009) (internal quotation marks and citation omitted).

The trouble with Ms. Chen's battery claim against Officer Ha is that there is no evidence in the record before the Court that Officer Ha ever touched Ms. Chen or caused her to be touched, much less used excessive force against her. At the same time, the plaintiff fails to point to any record evidence indicating that Officer Ha ever attempted or threatened to harm Ms. Chen physically.[2] Ms. Chen's failure to identify such evidence is fatal to her assault claim. Consequently, the Court will enter summary judgment for Officer Ha as to Ms. Chen's assault and battery claim.

*C. 42 U.S.C. § 1983*

To make out a claim against an individual under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant, while acting under color of state law, deprived her of "rights, privileges, or immunities secured by the Constitutions and laws" of the United States. 42 U.S.C. § 1983. Ms. Chen alleges that her constitutional rights were violated by Officer Ha because Officer Ha (1) participated in the unlawful detention of Ms. Chen, in violation of the Fourth Amendment's guarantee against unreasonable seizures, see Opp. at 17-21, and (2) failed to intervene when Officer Monk searched Ms. Chen and took $60 from her without legal justification, in violation of the Fourth Amendment's prohibition on unreasonable searches. See id. at 24-25.

---

[2]  In its Opinion denying Officer Ha's motion to dismiss Ms. Chen's complaint, the Court concluded that Ms. Chen stated a claim for assault against Officer Ha because she alleged that Officers Ha, Spears, and Monk "surrounded" her "both before and after [she] was taken to the Red Roof Inn." Chen v. District of Columbia, 256 F.R.D. at 272. Since during discovery, Ms. Chen has failed to produce or elicit any evidence — even from her own deposition testimony — to support the allegation that the officers "surrounded" her, that allegation cannot serve as the basis of an assault claim at the summary judgment stage.

Officer Ha contends that she bears no liability for her role in Ms. Chen's detention because, as a police officer merely complying with a request by another office for assistance with an investigation, she is entitled to qualified immunity. See MSJ at 20. The court of appeals has summarized the doctrine of qualified immunity as follows:

> The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Wilson v. Layne, 526 U.S. 603, 614 (1999) (holding that qualified immunity turns upon the "objective legal reasonableness of the officers' action, assessed in light of the legal rules that were clearly established at the time the action was taken" (internal quotation marks and citation omitted)).

Pitt v. District of Columbia, 491 F.3d 494, 509 (D.C. Cir. 2007). A defendant's entitlement to qualified immunity is a question of law to be decided by the court, see id., although sometimes, as in this case, the facts establishing what the challenged conduct was are legitimately in dispute and must first be decided by the jury before the court answers the ultimate legal question whether a defendant is entitled to qualified immunity. See Zellner v. Summerlin, 494 F.3d 344, 367-68 (2d Cir. 2007); Halcomb v. Washington Metropolitan Area Transit Authority, 526 F. Supp. 2d 20, 22 (D.D.C. 2007). "Whether an official protected by qualified immunity may be held personally liable . . . generally turns on the objective legal reasonableness of the action." Wilson v. Layne, 526 U.S. 603, 614 (1999). In assessing whether a party is entitled to qualified immunity, the facts must be taken in the light most favorable to the party asserting the constitutional injury. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500

U.S. 226, 232 (1991)), *rev'd on other grounds by* Pearson v. Callahan, 129 S.Ct. 808 (2009); see also Scott v. Harris, 550 U.S. 372, 377 (2007).

"'Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for [her] actions exists (*e.g.*, a warrant, probable cause, exigent circumstances).'" Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003) (quoting Bilida v. McCleod, 211 F.3d 166, 174-75 (1st Cir. 2000)); see also Barnhardt v. District of Columbia, 723 F. Supp. 2d at 216 ("A police officer may rely on a fellow officer's assessment of circumstances sufficient to warrant a suspect's arrest."). As she argued in response to Ms. Chen's claim for common law false arrest, Officer Ha contends with respect to the plaintiff's Section 1983 claim that she cannot be held liable for civil damages because she merely responded reasonably to Officer Monk's request for assistance. See MSJ at 20. While that contention may ultimately prove correct, the Court cannot accept it as a matter of law at this time because, again, the actual content of Officer Monk's request to Officer Ha is not contained in the record before the Court. See supra at 8. As a result, the Court cannot grant summary judgment on this issue.

Ms. Chen claims that Officer Ha is also liable for damages under Section 1983 because she did not prevent Officer Monk from reaching into Ms. Chen's pocket and removing $60, which he then gave to the Red Roof Inn's desk clerk — actions which, according to Ms. Chen, constituted an unreasonable search and seizure in violation of the Fourth Amendment. See Opp. at 24-25. Although Officer Ha is not alleged to have participated directly in the alleged search and seizure in question, a defendant police officer may be held liable for the

11

unconstitutional actions of a fellow officer if she "'(1) kn[ew] that [the] fellow officer [was] violating an individual's constitutional right; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act.'"  Matthews v. District of Columbia, 730 F. Supp. 2d 33, 39 (D.D.C. 2010) (quoting Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 72 (D.D.C. 2005)).  Ms. Chen contends that Officer Ha was present when Officer Monk searched Ms. Chen and took her money, that the illegality of the search and seizure must have been apparent to Officer Ha, and that Officer Ha passed up a reasonable opportunity to prevent the harm caused by the search and seizure.  See Opp. at 25.

Officer Ha, on the other hand, argues that, even assuming that Officer Monk's conduct in seizing the $60 from Ms. Chen was unconstitutional, there was no way for Officer Ha to have known that or to have prevented any harm to Ms. Chen.  See MSJ at 22-23.  The Court is aware of no legal authority permitting a police officer to confiscate money from a suspect and return it to the alleged victim without the suspect's permission and with no legal process.  There are facts in dispute.  With proper instructions, a jury will be better able to resolve the issue after hearing the parties' dueling accounts of the incident.  Officer Ha's motion for the entry of summary judgment with respect to Ms. Chen's Section 1983 claim therefore will be denied.

### D.  Intentional Infliction of Emotional Distress

To establish IIED liability under District of Columbia law, plaintiffs must show: "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress."  Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002).  See also Pitt v. District of Columbia, 491 F.3d at 505-06;

Halcomb v. Woods, 610 F. Supp. 2d 77, 80 (D.D.C. 2009). The first element of the tort is satisfied only when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998) (citation omitted). Thus, liability under this tort "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965) ("RESTATEMENT"). See also Cooke-Seals v. District of Columbia, 973 F. Supp. 184, 186 (D.D.C. 1997) (IIED liability is reserved for truly outrageous conduct). In determining whether specific acts rise to the extreme and outrageous level, courts are guided by "(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place." King v. Kidd, 640 A.2d 656, 668 (D.C. 1993).

       The second element requires that the defendant inflicted severe emotional distress in an intentional or reckless manner. See RESTATEMENT § 46 cmt. I. In some cases it is "possible to infer the existence of . . . intent or recklessness . . . from the very outrageousness of a defendant's conduct." Halcomb v. Woods, 610 F. Supp. 2d at 80 (quoting Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982)). The third element of the tort requires that the plaintiff suffer "severe emotional distress." To qualify as severe emotional distress, the distress asserted must be "of so acute a nature that harmful physical consequences might be not unlikely to result." Sere v. Group Hospitalization Inc., 443 A.2d at 37 (quoting Clark v. Associated Retail Credit Men, 105 F.2d 62, 65 (D.C. Cir. 1939)). In addition, the distress asserted may not be "exaggerated and unreasonable" under the circumstances, "unless it results from a peculiar susceptibility to such distress of which the actor has knowledge." RESTATEMENT

§ 46 cmt. j.  See also Langer v. George Washington Univ., 498 F. Supp. 2d 196, 201 (D.D.C. 2007).

Officer Ha argues that Ms. Chen's IIED claim fails because the record does not support the contention either that Officer Ha engaged in outrageous conduct, or that she acted with the requisite intent or recklessness.  See MSJ at 24-25.  The Court rejected those arguments, however, when it denied Officer Ha's motion to dismiss Ms. Chen's complaint, see Chen v. District of Columbia, 256 F.R.D. at 273, and the factual allegations upon which the Court relied in reaching that decision are now supported by some evidence in the record that must be presented to a jury for resolution.  The Court therefore declines to enter summary judgment for Officer Ha on the IIED claim.

## IV.  CLAIMS AGAINST THE DISTRICT OF COLUMBIA

Ms. Chen contends that the District of Columbia is liable for the negligent hiring, training, and/or supervision of the officers involved in this case, see Opp. at 26-27, or that the District may be held vicariously liable for the alleged negligence of one or more of those officers.  See id. at 26.  She cannot sustain any of those claims.  The record contains absolutely no evidence concerning the training or supervision of Metropolitan Police Officers in general or of Officers Ha, Monk, or Spears in particular, nor does it include any evidence regarding the hiring of those officers.  Consequently, judgment for the District must be entered on the plaintiff's claims of negligent supervision, training, and hiring.

Ms. Chen's contention that the District is vicariously liable for some negligent conduct on the part of Officer Ha, Monk, and/or Spears must fail because Ms. Chen has not

articulated any theory under which the alleged actions of any of those officers could be held to constitute negligence, as opposed to an intentional or constitutional tort.  See Chen v. District of Columbia, 256 F.R.D. at 273.  Judgment for the defendant will be entered with respect to all of plaintiff's claims against the District of Columbia.

## V.  CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by the District of Columbia and Nicole Ha will be granted in part and denied in part.  Judgment will be entered for the defendants with respect to all claims against the District of Columbia and plaintiff's assault and battery claim against Officer Ha.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Court

DATE:   September 9, 2011