UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                               )
ZHI CHEN,                                      )
                                               )
          Plaintiff,                           )
                                               )
     v.                                        )
                                               )          Civil Action No. 08-0252 (PLF)
DISTRICT OF COLUMBIA, *et al.*,                )
                                               )
          Defendants.                          )
_____)
                                               )
ZHI CHEN,                                      )
                                               )
          Plaintiff,                           )
                                               )
     v.                                        )
                                               )          Civil Action No. 09-1536 (PLF)
DISTRICT OF COLUMBIA, *et al.*,                )
                                               )
          Defendants.                          )
_____)

OPINION

This matter is before the Court on the plaintiff's motion for discovery sanctions

against defendant Red Roof Inn ("Red Roof").  The plaintiff contends that Red Roof willfully,

recklessly, or negligently failed to preserve relevant evidence.  She seeks sanctions in the form of

an adverse inference instruction at trial and attorneys' fees and costs.  Upon consideration of the

parties' arguments, the relevant legal authorities, and the evidentiary record in this case, the

Court concludes that Red Roof has committed serious misconduct and should be sanctioned,

although the Court will not issue the precise adverse inference instruction sought by the plaintiff.

The plaintiff's motion therefore will be granted in part and denied in part.

## I.  BACKGROUND

The events giving rise to plaintiff's claims against Red Roof occurred on April 21, 2007, and are detailed in the Court's Opinion, issued this same day, granting in part and denying in part the motion for summary judgment filed by defendants Nicole Ha and the District of Columbia ("MSJ Opinion").  In brief, the plaintiff, Zhi Chen, alleges that a police officer moonlighting as a security guard for a Red Roof Inn located in the Chinatown neighborhood of Washington, D.C., unlawfully detained, searched, and took $60 from her after mistaking her for a woman who had left the hotel without paying her room bill.  See MSJ Opinion at 2-4.  Most of the relevant events that are said by one party or another to have occurred on April 21, 2007 — including the hurried departure of a woman suspected of not paying her hotel bill and the subsequent search of Ms. Chen and confiscation of $60 from her — took place in or around the lobby of the Chinatown Red Roof Inn.  See id.

On April 23, 2007, just two days after the events in question, plaintiff's counsel, B. Marian Chou, Esq., faxed a letter to Heidi Cordes, the general manager of the Chinatown Red Roof Inn.  See Plaintiff's Motion for Sanctions Against Red Roof Inn ("Mot."), Ex. 6.  In the letter Ms. Chou, purporting to "confirm [a prior] phone conversation" between herself and Ms. Cordes, asserted that her client, Ms. Chen, had been wrongly detained by a police officer working on behalf of the Red Roof Inn on April 21, 2007, and warned Ms. Cordes that her client was "very distraught and [has] instruct[ed] me to sue for one million and half."  Id.  Ms. Chou "demand[ed] [Ms. Cordes'] investigation and monetary damages."  Id.

In another letter, dated April 27, 2007, and sent to Red Roof's legal counsel, Alan Rabinowitz, Esq., Ms. Chou stated first that she wished to "confirm that I called you this

afternoon and [that] I have sent [you] at least two letters" by fax.  Mot., Ex. 1.  She continued, "I

. . . want to confirm that your Red Roof Inn has at least four security cameras. . . . I would like to

have a copy of your tape/disc of the relevant incident that I referred [to] in [a prior] letter."  Id.

Noting that she did not expect to receive copies of the security footage at that time, Ms. Chou

asserted, "This is a notice to your company not to destroy any evidence."  Id.  At the bottom of

the letter is a notation indicating that a copy of the letter was sent to Ms. Cordes.  See id.  Ms.

Cordes denies having received a copy of the April 27, 2007 letter, but does not dispute that she

received the faxed letter dated April 23, 2007.  See Affidavit of Heidi Cordes (attached to

Opposition to Plaintiff's Motion for Sanctions Against Red Roof Inn) ("Cordes Affid.") ¶ 17.

       According to Ms. Cordes, images from the security cameras at the Chinatown Red

Roof Inn were recorded on a digital video recorder (DVR).  See Mot., Ex. 2 (email from Heidi

Cordes to Alan Siciliano dated Jan. 11, 2010).  The Inn's DVR could only hold two weeks'

worth of footage.  See id.  After two weeks, the DVR overwrote any stored images with new

recordings.  See id.  Ms. Cordes says that after she "was contacted by Ms. Chou" in April 2007,

she

> personally reviewed the video from the three lobby cameras several
> times to get the correct times to start and end the recordings.  I then
> gave that information to my maintenance engineer along with
> which cameras (only two of the cameras in [the] lobby showed the
> image of the woman leaving the hotel) that I wanted the video
> [*sic*].  He did as he was instructed, gave me the disc, and I put it in
> my desk.  I did not check the disc once it was given to me. . . .
> Once I was requested [*sic*] several weeks later to make a copy of
> my disc to send to the corporate office, I discovered the video had
> not recorded.

Mot., Ex. 2; see also Cordes Affid. ¶¶ 4, 6, 7.  Of course, by that point in time the original

3

security footage of the events in question had been destroyed when the DVR, operating on its usual two-week schedule, overwrote it.  Mot., Ex. 2.  Ms. Cordes claims that, upon discovering that the disc that was supposed to contain the only copy of the destroyed footage was apparently blank, she "disposed of it," reasoning that "[t]here were no images, so I did not think I needed to keep it."  Id.

Ms. Cordes' account of her failed attempt to preserve the security footage conflicts in some material respects with other evidence in the record.  The District of Columbia's Office of Police Complaints investigated the April 21, 2007 incident at the Inn and memorialized its investigation in written reports and memoranda.  See Mot., Ex. 3.  One of those memoranda summarizes an interview with James Hicks, the engineer at the Chinatown Red Roof Inn who was asked by Ms. Cordes to make a copy of the relevant security footage.  See id.  According to Mr. Hicks, he had recorded the copy onto two discs, not one as Ms. Cordes would have it, and both discs contained viewable footage when he had checked them after making the copy.  See id. He theorized that "the DVDs must have been erased in his attempts or General Manager Cordes' attempts to view them."  Id.

The plaintiff apparently learned of the loss of the potentially relevant security footage after she served a request for production of documents that sought "[a]ny and all video tapes of the subject occurrence recorded by the Defendant's video camera . . . from 4/20/2007 to 4/22/2007."  See Mot., Ex. 4 (defendant's answers to interrogatories).

## II.  SPOLIATION AND ADVERSE INFERENCE

A party has a duty "to preserve potentially relevant evidence . . . 'once [that party] anticipates litigation.'"  D'Onofrio v. SFX Sports Group, Inc., Civil Action No. 06-0687, 2010 WL 3324964, at *5 (D.D.C. Aug. 24, 2010) (quoting Smith v. Café Asia, 246 F.R.D. 19, 21 n.2 (D.D.C. 2007)); see Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").  That obligation "runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction."  Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 437 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  The duty also extends to the managers of a corporate party, who "are responsible for conveying to their employees the requirements for preserving evidence."  Id.

A party that fails to preserve evidence "runs the risk of being justly accused of spoliation" – defined as "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" – and find itself the subject of sanctions.  D'Onofrio v. SFX Sports Group, Inc., 2010 WL 3324964 at *5 & n. 5.  The sanctions available for the destruction of documents or evidence with notice of their potential usefulness in litigation may include the assessment of fines or attorneys' fees and costs, the preclusion of certain lines of argument that might have been advanced by the culpable party, and/or the issuance of an instruction informing jurors that they may draw an adverse inference from the spoliator's actions.  See JAMIE S. GORELICK, STEPHEN MARZEN & LAWRENCE

SOLUM, DESTRUCTION OF EVIDENCE § 3.16, at 117-22 (1989 & 2010 Supp.); see also Shepherd v. American Broadcasting Corp., 62 F.3d 1469, 1478-79 (D.C. Cir. 1995); D'Onofrio v. SFX Sports Group, Inc., 2010 WL 3324964 *5.  A court generally imposes such sanctions in the exercise of its inherent authority  "'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'"  Young v. Office of U.S. Senate Sergeant at Arms, 217 F.R.D. 61, 65 (D.D.C. 2003) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).  That authority "must be exercised with restraint and discretion."  Id. (internal quotation marks and citation omitted).

Ms. Chen seeks two forms of sanctions against Red Roof Inn: an adverse inference jury instruction and attorneys' fees and costs.  See Mot. at 17.  "[A] district court may impose issue-related sanctions," such as an adverse inference instruction, "whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue."  Shepherd v. American Broadcasting Companies, Inc., 62 F.3d at 1478.  Furthermore, in order to demonstrate that an adverse inference instruction is warranted, the requesting party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

Mazloum v. District of Columbia Metro. Police Dep't, 530 F. Supp. 2d 282, 291 (D.D.C. 2008) (citation omitted).

6

As to the first showing, Red Roof does not argue — nor could it credibly do so — that it had no obligation to preserve the security footage recorded on April 21, 2007.  There is no doubt that both Red Roof's counsel, Mr. Rabinowitz, and Ms. Cordes were put on notice almost immediately following the April 21 incident that litigation against the company by Ms. Chen was a strong possibility.  Ms. Chou bluntly informed Ms. Cordes that she (Ms. Chou) had been instructed "to sue for one million and half," Mot., Ex. 6 at 1, and Ms. Chou sent multiple letters to Mr. Rabinowitz concerning Ms. Chen's claims against the Inn's security guard and even warned him that the company should "not . . . destroy evidence."  Mot., Ex. 1.

It should have been — and was — readily apparent to Ms. Cordes that the recordings made by the lobby security cameras on April 21, 2007, were potentially highly relevant to Ms. Chen's claims.  Ms. Chou informed Ms. Cordes that the allegedly illegal detention and search of Ms. Chen by the Inn's security guard, followed by the guard's alleged seizure of $60 from Ms. Chen's pocket, occurred inside the Inn itself.  See Mot., Ex. 6 at 1.  Ms. Cordes, after speaking to the security guard in question, Charles Monk, learned that he believed Ms. Chen had fled from the Inn on the night in question to avoid paying her bill.  See id. at 3 (handwritten notes of Charles Monk).  That is why Ms. Cordes searched the security footage for images of "the woman leaving the hotel."  Mot., Ex. 2.

Red Roof, put on notice of the likelihood of litigation and aware of the potential relevance of the security footage, had a clear obligation to preserve that evidence.  That it failed to do so is uncontested; Red Roof allowed the footage to be overwritten and neglected to maintain any viable copy of it.  Red Roof disputes, however, that sanctions for spoliation are warranted, and asserts that "[t]he Plaintiff has not presented anything that could be construed as

7

purposeful destruction of evidence," Opposition to Plaintiff's Motion for Sanctions Against Red Roof Inn ("Opp.") at 3.  In other words, Red Roof denies having a "culpable state of mind." Mazloum v. District of Columbia Metro. Police Dep't, 530 F. Supp. 2d at 291.

   As to this second prerequisite – a culpable state of mind – Red Roof's defense of its loss of evidence is unavailing.  To justify the issuance of an adverse inference instruction, the spoliation of evidence need not be "purposeful," as Red Roof implies; negligent spoliation may suffice.  See Mazloum v. District of Columbia Metro. Police Dep't, 530 F. Supp. 2d at 292-93; accord Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002).  And the Court easily concludes that Red Roof was at least negligent in failing to preserve the security footage.  Indeed, the facts presented in this case invite application of the doctrine of *res ipsa loquitur*, as the situation here is one that should not occur in the absence of negligence.  See RESTATEMENT (SECOND) OF TORTS § 328D (1965) (*res ipsa loquitur*).  Red Roof had possession of the footage and easily could have preserved it either by (1) halting the DVR's periodic overwriting of existing footage, or (2) burning a viable copy of the footage onto a DVD.  That Red Roof allegedly tried and failed to do the latter is no excuse.  In the absence of any other explanation, the Court must conclude that, assuming no one is misrepresenting any relevant facts, only negligence could have left Ms. Cordes with a blank disc instead of the footage that should have been recorded.  Either Red Roof's Chief Engineer was negligent in making the copy, or Ms. Cordes or some other Red Roof employee was negligent in maintaining it.  Furthermore, in light of Red Roof's clear obligation to preserve the footage, it was pure negligence for Ms. Cordes to fail to inspect the contents of the disc immediately — before the original footage was overwritten — to ensure that she had a usable copy.

Indeed, the Court finds, on the basis of the overwhelming evidence of Red Roof's cavalier attitude toward its discovery obligations, that the conduct of Red Roof was not merely negligent, but grossly negligent.  There is no evidence, and no claim by Red Roof, that Red Roof's counsel or management ever took any steps to discuss the company's obligations to preserve evidence with Ms. Cordes or with other employees.  In fact, Ms. Cordes still appears unaware of those obligations.  See Cordes Affid. ¶ 13 ("I am not aware of any 'duty' that required me to view the DVD [supposedly containing a copy of the security footage] upon its presentation to me.").  If Ms. Cordes had been properly instructed by counsel regarding the duty to preserve evidence and had followed those instructions, she would not have simply "disposed of" the seemingly blank DVD when she found no viewable footage on it, see Mot., Ex. 2; she would have contacted Red Roof's counsel and informed him of the problem, so that proper steps could be taken to ensure that the footage was indeed lost.  Those steps could have included checking with the Chief Engineer to determine that he gave the correct disc to Ms. Cordes, and having him inspect the disc himself to make sure that Ms. Cordes was using it properly.

The level of carelessness evident in the behavior of Red Roof's agents leads the Court to the inescapable finding that Red Roof's spoliation was grossly negligent.  Red Roof therefore has the "culpable state of mind" required to warrant an adverse inference instruction. See Residential Funding Corp. v. DeGeorge Financial, 306 F.3d at 108 (culpable state of mind factor is satisfied by showing that evidence was destroyed either knowingly or negligently "because each party should bear the risk of its own negligence"); Mazloum v. District of Columbia Metro. Police Dep't, 530 F. Supp. 2d at 293 (same); More v. Snow, 480 F. Supp. 2d 257, 275 (D.D.C. 2007) (adverse inference may be applied even if deliberate or reckless conduct

is not present); Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (culpable state of mind for purpose of spoliation inference includes ordinary negligence).

The third and last requirement for an adverse inference instruction is a showing that the destroyed evidence was relevant to the moving party's claims or defenses.  In this context, "'the concept of "relevance" encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant.'"  Zubulake v. UBS Warburg LLC, 229 F.R.D. at 431; see also Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 108-09.  Of course, it is highly likely that the lost security footage would have been relevant to Ms. Chen's claims in the broader sense; it would have provided the only objective evidence — in contrast to the possibly biased and certainly conflicting testimony of Ms. Chen and the defendants — of what actually happened on the night in question.  But in the absence of the footage, Ms. Chen obviously cannot prove directly that it would have been favorable to her. She must instead rely on circumstantial evidence: the spoliator's culpable state of mind.

"Relevance . . . 'may be inferred if the spoliator is shown to have a sufficiently culpable state of mind,'" Centrifugal Force, Inc. v. Softnet Commc'n, Inc., Civil Action No. 08-5463, 2011 WL 1792047, at *5 (S.D.N.Y. May 11, 2011), on the theory that a culpable spoliator may have something to hide.  See GORELICK, DESTRUCTION OF EVIDENCE § 2.3, at 35. "Where the moving party 'adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) in bad faith or through gross negligence . . ., that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party.'"  Centrifugal Force, Inc. v. Softnet Commc'n, Inc., 2011 WL 1792047, at *5 (quoting  Residential Funding Corp. v. DeGeorge Fin.

Corp., 306 F.3d at 109).  As the Court has already determined, Red Roof's actions in allowing

the original security footage to be destroyed without preserving a viable copy were at best grossly

negligent.  Based on that conclusion, a reasonable jury could also find that the destroyed

evidence was adverse to Red Roof.  The "relevance" requirement therefore is satisfied.

       Ms. Chen has demonstrated to the Court's satisfaction that the requirements for

the issuance of an adverse inference instruction have been fulfilled.   The Court further notes that

the circumstances of this case make issuance of such an instruction particularly appropriate.  In

deciding whether to issue an adverse inference instruction, a court may consider, in addition to

the three elements that are prerequisites, "the importance of the evidence involved, the

importance of the evidence lost to the issues at hand, and the availability of other proof enabling

the party deprived of the evidence to make the same point."  More v. Snow, 480 F. Supp. 2d at

274 (internal quotation marks and citation omitted).  The evidence lost by Red Roof was of

critical importance to this case.  A contemporaneous recording of the events that occurred in the

Inn's lobby on April 21, 2007 could have demonstrated whether the Inn's security guard had a

sufficient basis for the detention of Ms. Chen, or whether Ms. Chen willingly gave $60 to the

guard or had it taken from her.  Without the security footage, a jury will be left with only the

competing and possibly unreliable accounts of various witnesses as evidence of the events of that

night.  Red Roof's actions have materially altered the evidentiary picture that may be presented to

the jury, decreasing the likelihood that the jury will be able to reach an accurate determination of

the plaintiff's claims.  In short, the Court finds by a preponderance of the evidence — indeed, by

clear and convincing evidence, see infra at 14 — that Red Roof's "misconduct has tainted the

evidentiary resolution" of issues central to this case.  As the party responsible for causing this

damage to the judicial process, Red Roof should bear the cost of its actions.  See GORELICK,

DESTRUCTION OF EVIDENCE § 2.3, at 36-36 (explaining the "fair process" justification for

issuance of an adverse inference instruction).

  With those considerations in mind, the Court has determined that an instruction

should issue.  Ms. Chen has not presented the Court with a coherent proposed instruction.  She

suggests only that the Court give an adverse inference instruction to the effect that "Red Roof Inn

had no reason [or] probable cause to pursue Plaintiff at all."  Mot. at 17.  Since it directs the jury

to reach a particular result and makes no reference to the lost evidence, the suggested instruction

is inappropriate.  The Court instead proposes to give an instruction along these lines:

> You have heard testimony about evidence which has not been
> produced.  Counsel for plaintiff has argued that this evidence was
> in defendant [Red Roof Inn's] control and would have proven facts
> material to the matter in controversy.
>
> If you find that the defendant could have produced the evidence,
> and that the evidence was within the defendant's control, and that
> this evidence would have been material in deciding among the
> facts in dispute in this case, then you are permitted, but not
> required, to infer that the evidence would have been unfavorable to
> the defendant.
>
> In deciding whether to draw this inference, you should consider
> whether the evidence not produced would merely have duplicated
> other evidence already before you.  You may also consider whether
> the defendant had a reason for not producing this evidence, which
> was explained to your satisfaction.  Again, any inference you
> decide to draw should be based on all of the facts and
> circumstances in this case.

4 HON. LEONARD B. SAND, ET AL., MODERN FEDERAL JURY INSTRUCTIONS ¶ 75.01 (2007)

(Instruction 75-7: Party's Failure to Produce Evidence).  If Ms. Chen or Red Roof Inn wishes to

propose alternative language for the Court's consideration, either party may do so when proposed jury instructions are submitted just prior to trial.

As the text of the instruction cited suggests, the Court expects that Ms. Chen will introduce evidence of Red Roof's spoliation at trial; indeed, she will have to do so in order to permit the jury to evaluate whether Red Roof's actions warrant an adverse inference. Ms. Chen should also be aware that the adverse inference instruction will be applicable only to Red Roof, not to any other defendant, since there is no evidence that any other defendant was involved in the spoliation at issue. See GORELICK, DESTRUCTION OF EVIDENCE § 2.10, at 44 (purposes of adverse inference served "only when the party to whom the adverse inference is applied is himself the destroyer of the evidence"). A limiting instruction may or may not be sufficient to prevent the other defendants from being prejudiced by the adverse inference instruction applicable to Red Roof. On the other hand, it may be necessary for Ms. Chen to try her claims against Red Roof separately from her claims against the other defendants. Again, the Court is open to suggestions from the parties as to how to deal with this problem.

### III. ATTORNEYS' FEES AND COSTS

In addition to her request for an adverse inference instruction, Ms. Chen has asked for attorneys' fees and costs to be assessed against Red Roof Inn. See Mot. at 17. Generally, if a "victim demonstrates that [another party] destroyed discoverable material it knew or should have known was relevant to pending, imminent, or reasonably foreseeable litigation, courts award the victim its attorney's fees and costs on the sanctions motion." GORELICK, DESTRUCTION OF EVIDENCE § 3.16, at *118. Such an award of fees and costs "serves the remedial purpose of

13

compensating [the movant] for the reasonable costs it incurred in bringing [a motion for sanctions]." Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC, 685 F. Supp. 2d 456, 471 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). Since such an award also has a punitive purpose and effect, however, our court of appeals has indicated that the Court must find sanctionable conduct by clear and convincing evidence. See Shepherd v. American Broadcasting Companies, Inc., 62 F.3d at 1477.

The facts upon which the Court has based its finding that Red Roof was, at best, grossly negligent in failing to preserve vital evidence are not in dispute, and Red Roof has presented no defense of its actions except its claim that the loss of evidence was not deliberate. The evidence of Red Roof's misconduct therefore is clear and convincing, and it is appropriate to compensate Ms. Chen for the expenses incurred in bringing her motion for sanctions. The Court will award Ms. Chen her reasonable attorneys' fees and costs associated with the preparation of the motion for sanctions. Ms. Chen may file a petition for fees and costs, with appropriate supporting documentation, for the Court's approval at the conclusion of her case against Red Roof.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Ms. Chen's motion for sanctions to the extent that it requests an adverse inference instruction and an award of attorneys' fees and costs. The motion is denied, however, with respect to the specific language that Ms. Chen

proposes for inclusion in the instruction.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Court

DATE:   September 9, 2011